LAU *v.* LAKE SHORE & MICHIGAN SOUTHERN RAILWAY CO.[1]

RAILROAD CROSSINGS — ACCIDENT TO BICYCLIST — CONTRIBUTORY NEGLIGENCE.

A bicyclist who, upon approaching a railroad crossing with which he is familiar, finds that the first two of the three tracks, which lie eight feet apart, are occupied by lines of freight cars, completely obstructing, in one direction, a view of the third and main track, and who, without dismounting to look and listen, proceeds at a slow rate of speed, and collides with an engine upon the main track, moving, without signals, from the direction in which the view is obstructed, is guilty, as matter of law, of such contributory negligence as will preclude a recovery for the injuries received.

MOORE and MONTGOMERY, JJ., dissenting.

[1] Rehearing denied July 11, 1899.

Error to Wayne; Hosmer, J. Submitted October 4, 1898. Decided May 9, 1899.

Case by Oliver H. Lau against the Lake Shore & Michigan Southern Railway Company for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

Plaintiff, a physician 42 years of age, residing in Detroit, at about 8 o'clock in the evening of September 21, 1896, was traveling on his bicycle to visit a patient. He crossed Hastings street, and, on nearing the tracks of the defendant company, left the street, which was unpaved and somewhat rough, and went upon the sidewalk on the east side. There were three tracks, one main line and two side tracks, the main track being the northerly one. The south rail of the main track is eight feet from the north rail of the nearest side track. Two lines of box cars were standing upon the two side tracks, east of the sidewalk. The car standing upon the middle track, which was next to the main track, stood within three or four feet of the east line of the sidewalk. By an actual measurement made the next morning by one of plaintiff's witnesses, the exact distance was four feet. The side of a box car extends about two feet over the rail, and the side of an engine about the same distance. Plaintiff was perfectly familiar with the crossing, and knew that a train of cars was liable to approach at any moment. The night was cloudy and still. He saw the cars standing to the east, and testified that he went on across the sidewalk, and slowed his bicycle to a gait that he could just keep on it nicely. He further testified that, immediately on passing by the end of the freight car, he was struck by the engine. Upon this point, on direct examination, he testified:

"*Q.* Were you struck by the pilot of the train, or did you run into the train?
"*A.* I was run into. * * *

" *Q.* How far did you have to run from the instant you saw the light before you could get on the ground,—get off your wheel?

"*A.* It was almost instantaneously; it was like a shot,— instantly.   I don't know how far I did go."

On cross-examination he testified:

"*Q.* Now, if I understood you correctly yesterday, as you got up about on the track that the cars were standing on, so that you could readily see by the cars, you saw the locomotive passing towards Hastings street, on the main track?

"*A.* Yes; when I saw it at all, the first I saw it was coming there.

"*Q.* And you saw it as soon as you could fairly see by the end of this car?

"*A.* Yes, sir.

"*Q.* And, when you saw it, it seemed to be almost in front of you, as it were?

"*A.* Yes, sir.

"*Q.* Now, at that instant, you undertook to back pedal, did you not?

"*A.* To prevent myself from going forward, you mean? Yes, sir.

"*Q.* You threw your weight on the pedal that was coming up, to endeavor to stop the machine?

"*A.* Yes, sir.

"*Q.* That is what I meant by back pedaling. Now, it seemed to you almost instantaneous, did it, from the moment you saw the engine that you were in contact with something?

"*A.* Yes, sir."

On redirect examination he testified:

"*Q.* Are you prepared now to tell the court and jury— are you prepared positively to tell them under oath—that you did not strike that train between the tender and the first car with your wheel?

"*A.* My impression is that I did not.

"*Q.* I understand that your impression is that you did not, but I ask you if you are willing to positively testify now that you did not.

"*A.* Well, I only want to testify what my impression about the matter is, and that is that I don't know about that part.   I don't think I did.   *   *   *

"*Q.* Are you able to give the fact or an impression of the length of the interval between the time when that light flashed in your face and when you were among the wheel and machinery of the locomotive?

"*A.* It was instantly.

"*Q.* There was no interval?

"*A.* No; it was just like a flash,—instantly."

The forward wheel of his bicycle was broken, and the fork was run over by a car wheel. The rear wheel and frame were intact, and the bicycle was found after the accident about eight feet north of the track, while plaintiff lay on the south side. No one of the crew saw the accident. There was testimony that there was no watchman or gate, and that no bell was rung. The train was a freight, and was making a flying switch. The train had been broken in two, and the engine, with some cars attached, was going west. Steam had been shut off. Plaintiff was very seriously injured. The negligence charged is the failure to ring the bell and an unjustifiable rate of speed. After plaintiff had rested, the court directed a verdict for the defendant, but for what reason the record does not show, but counsel state that it was on the ground of contributory negligence on the part of the plaintiff. In order that the situation may be clearly understood, we insert the plat showing the situation.

*Wisner & Harvey*, for appellant.

*Wells, Angell, Boynton & McMillan*, for appellee.

Grant, C. J. (*after stating the facts*). The rights and duties of a traveler upon a bicycle, when approaching a railroad crossing, are before this court for the first time. These rights and duties must be determined without reference to the distressing result of this accident to the plaintiff. The learned counsel for plaintiff, in his argument, conceded that it was the duty of the plaintiff to exercise a high degree of care. Manifestly, this was his duty because of the danger to which he was exposed. Did he,

under the circumstances, exercise that degree of care which the law requires? Had he been on foot and been

injured, he could not recover. *Gardner* v. *Railroad Co.*, 97 Mich. 240; *Braudy* v. *Railway Co.*, 107 Mich. 100.

Had plaintiff the right to ride his bicycle past the obstruction to his sight at such a rate of speed that he could neither control it nor dismount after passing the obstruction, before running in front of or against the engine? He knew the distance between the tracks, and must be held to know that, when his body passed the obstruction, his front wheel would be very near a moving train on the main track. There would have been no substantial delay to him if he had dismounted and walked past the obstruction. He could have dismounted when he was eight feet from the track. Had he done this, the danger would have been avoided. He was experienced in bicycle riding, and whether he could have ridden slowly enough to avoid the danger we need not determine. A bicycle is almost noiseless, and it seems almost incredible that, had he listened, in the stillness of the night, he could not have heard the approaching train. It seems equally incredible that he could not have seen the light of the headlamp of the engine shining upon the sidewalk ahead of him, even if it did not shine on the rails of the track over which the engine was approaching. There was a slight curve in the track east of the crossing, and it is urged that for this reason the headlight did not shine upon the track. There is no testimony in the case to show whether this was so.

We are cited to but one case involving the duty of the bicyclist in crossing a railroad upon the public highway. *Robertson* v. *Railroad Co.*, 180 Pa. St. 43 (57 Am. St. Rep. 620). In that case the bicyclist, instead of dismounting, rode around in a circle in the street, waiting for a train to pass. In endeavoring to cross, he was struck by a train upon another track and killed. In that case the obstruction was a tool-house standing seven feet from the track. The court said:

" The law requires a full stop, not only for the sake of time and opportunity for observation, but to secure undivided attention, and the substantial, and not mere perfunctory, performance of the duty to look and listen. Riding round and round in large circles or small circles,

waiting for a chance to shoot across, is not a stop at all, either in form or substance. Considering the ease of dismounting and the control of the rider over his instrument, a bicycler must, under all ordinary circumstances, be treated as subject to the same rules as a pedestrian."

If a person is required to stop his team and listen in cases where he cannot see, why should not the bicyclist, when his view is obstructed to within a few feet of the track, be required to dismount and ascertain the situation? It is no more trouble for him to dismount than it is for the driver to stop his team and listen. The delay is no longer; the trouble is no greater. In some States the question of contributory negligence is eliminated by statute, and the railroad made liable for damages in every case where it fails to give the statutory signals; but that is not the law in this State. If the plaintiff was going, as he testified, "at a gait that I could just keep on it nicely, so that I could see or hear if anything was in the way of my crossing there in the shape of trains," it is difficult to understand how the flash of the headlight and the collision occurred the instant he came in sight of the train. It is further more difficult to understand how, if he struck the side of the engine, his bicycle was found upon one side of the track and he upon the other. This condition can be accounted for upon no other theory than that he was in front of the engine when he was struck. Cars cannot stop instantly. Engineers and firemen do not always perform the duties imposed upon them in giving the signals. While the presumption may be that they do, human nature is not yet so perfect that every one performs his duty. To sustain the plaintiff's right of action would be to hold that he has the right to rely absolutely upon the performance of this duty by the trainmen, and that he may ride along regardless of consequences, and rely upon the absolute performance of this statutory duty. Ordinarily, this train could be heard when coming a long distance away. Ordinarily, the light from the headlight would be seen shining upon bodies in front of

it within the plaintiff's vision. Yet, in the face of the danger, we are asked to say that he was in the exercise of ordinary care, although, without any inconvenience, delay, or trouble to himself, he might have avoided the accident. The attention of the bicyclist must be more or less diverted by the control and management of his wheel, and this is especially true when he is trying to ride so slowly that he can just keep his balance. It is common knowledge that a good rider can ride as slowly as the average walk and keep his balance. But, if this were not so, it would be an additional reason why he should dismount. So, too, if there was any wind from the southeast, which would prevent his hearing the noise of the train, all the more the necessity for him to take this precaution to protect himself.

No one will contest the proposition that a traveler, in the exercise of due care, is entitled to rely on the statutory warnings. But the troublesome question always is, Was the traveler exercising such care? When the facts are undisputed, and are such that different conclusions cannot reasonably be drawn, the question is one of law for the court. It seems to us only common sense that he, in crossing a place the very existence of which is notice of danger, should stand in no better position than a pedestrian. In a second he can become a pedestrian, and in a second or two more place himself in position to know whether there is danger. If there is no danger, he can mount, and proceed with the delay of only a few seconds. If there is danger, he can avoid it. We think the law requires that he should take this precaution, and does not permit him to rely solely upon his sense of hearing and the performance of duties imposed upon others. Is it not common prudence for one, in entering a dangerous place, to take that course which involves no inconvenience, delay, or trouble to himself, and which will, if followed, insure his own safety as well as that of others? If it is, the law requires him to take it.

The plaintiff in this case was in a better position to pro-

tect himself than was the plaintiff in *Phillips* v. *Railway Co.*, 111 Mich. 274 (66 Am. St. Rep. 392). Mr. Phillips was quite deaf. He was riding in a single carriage, with the top up and curtains off. He could not see the train while sitting in his carriage, because a pile of railroad ties obstructed his view, but could have seen it if he had stopped, stood upright in his carriage, and looked. This court, in a unanimous opinion written by Chief Justice LONG, held that it was negligence in Mr. Phillips not to take this precaution, and that it barred his right of recovery.

We are of the opinion that the circuit judge was right in directing a verdict.

Judgment affirmed.

HOOKER and LONG, JJ., concurred with GRANT, C. J.

MOORE, J. (*dissenting*). I cannot agree with the conclusion reached by the Chief Justice. I do not think *Gardner* v. *Railroad Co.*, 97 Mich. 240, and *Braudy* v. *Railway Co.*, 107 Mich. 100, apply to this case. The plaintiff in each of those cases was upon foot, and in each instance, if he had looked, would have had abundant opportunity to see the danger when he was yet in a place of safety. Not only have pedestrians the right to pass in the public highway, but persons riding in carriages and wagons and upon bicycles. What would be reasonable care in a prudent person riding in a wagon might not be reasonable care in a prudent person riding upon a bicycle. What would be reasonable care in the case of a prudent bicycler might not be reasonable care in a foot passenger. It is true a railroad crossing is a place of danger, and one may not cross it recklessly or negligently. He must, if he would be protected, exercise such reasonable care as an ordinarily prudent man would exercise under like circumstances. In the case of a foot passenger, the courts say, if he has an opportunity to look and listen after passing the obstruction, and while in a place of safety, he is guilty of contributory negligence if he fails to do so. The courts

also hold that one riding in a wagon is bound to stop and listen, if there are obstructions in the way of vision, because it is well understood that the noise accompanying locomotion by animals and a wagon might prevent one from hearing the approach of the train a view of which was obstructed, and, under such circumstances, to fail to stop is not the exercise of the reasonable care of a prudent man. All of us who know anything about the use of a bicycle know there is no appreciable noise in its use. The noise of an approaching train would not be drowned in any degree by the noise of the wheel. It is also true that, while the machine is under much better control than a carriage propelled by horses, it cannot be stopped as quickly as a pedestrian may stop.

In the case at bar the record shows Dr. Lau approached the crossing appreciating it was a place of danger. He ran his wheel as slowly as possible and have it stand up. He looked and listened. There was a curve in the track. His line of vision after passing the obstruction, one witness states, would not reach more than 25 feet down the track. The night was still. What little wind there was came from the southeast. Dr. Lau was going north. He listened, and heard nothing. The record discloses testimony tending to show the train was coming from the east at the rate of 12 miles an hour, making a flying switch. The steam was shut off from the engine; no bell was rung; no whistle blown; no warning given; no watchman, gate, or lights at the crossing. It was very quiet. As Dr. Lau passed the obstruction to his line of vision, he was instantly struck, receiving injuries resulting in the amputation of one of his feet, and other permanent disabilities. 3 How. Stat. § 3375, requires a bell and a steam whistle upon each locomotive engine, and that the bell shall be rung continuously, and the whistle twice sharply sounded, at least 40 rods before the crossing is reached, and makes the company liable for all damages which shall be sustained by any person by reason of such neglect. The testimony of the plaintiff is to the effect that the bell was not rung and the whistle not blown.

The liability of the railroad company attached unless the plaintiff was guilty of such a degree of negligence as to relieve it. *Sanborn* v. *Railroad Co.*, 91 Mich. 538 (16 L. R. A. 119). In that case it was said by Justice LONG:

" The law is therefore well settled that a traveler upon the highway has a right to assume that a railway company will thus perform its statutory duty, and one on a highway, when he approaches a railroad crossing, and can neither see nor hear any indications of a moving train, is not chargeable with negligence for assuming that there is no train sufficiently near to make the crossing dangerous. One in such a position has a right to assume that a railroad company, in handling its cars, will act with appropriate care, and that the usual signals of approach will be reasonably given."

In the opinion written by Justice MONTGOMERY it is said:

" The statute imposes a positive duty upon the railroad company to sound its whistle and to ring its bell at a certain point. It is a well-known fact that not only those about to cross the railroad track, but those in the immediate vicinity, lawfully there, are frequently induced to rely upon the performance of this statutory duty. If they do so, and without fault of their own suffer an injury, we see no reason why the statute should not be so construed as to protect them."

See, also, *Guggenheim* v. *Railway Co.*, 66 Mich. 150; *Richmond* v. *Railway Co.*, 87 Mich. 380; *Van Auken* v. *Railway Co.*, 96 Mich. 307 (22 L. R. A. 33).

The case of *Robertson* v. *Railroad Co.*, 180 Pa. St. 43 (57 Am. St. Rep. 620), is cited as supporting the disposition made of the case by the circuit judge. This court has not been inclined to follow the Pennsylvania courts in negligence cases, but, if it were so inclined, the facts in the Pennsylvania case are so different from the case at bar that its decision is not controlling. The deceased in that case was traveling upon a highway which crossed four railroad tracks. As he approached the crossing, a freight train was passing upon one of the tracks nearest to him. He

did not dismount, but rode his wheel in circles in the highway. As soon as the freight passed the highway, without ascertaining whether the other tracks were free, he started to cross them, and was struck by a train coming from the direction in which the freight train was going. Under such circumstances, it might well be said his want of care caused the injury.

Men and women riding bicycles have the same right to use the highways which is accorded to pedestrians and to persons riding in carriages. It is their duty to recognize that railroad crossings are places of danger, and must be approached with care. They have a right to expect the employés of the railroad company will comply with the provisions of the statute, but this right of reliance will not excuse them if they are heedless and negligent. It is their duty to exercise such reasonable care as an ordinarily prudent person would use under like circumstances. If, when they are doing this, they are injured, because of the failure of the railroad company to ring the bell and blow the whistle, the railroad company is liable for the damage done to them. Whether in this case the plaintiff approached the crossing in the exercise of such reasonable care as a person of ordinary prudence would use under like circumstances was, we think, a question which should have been submitted to the jury. *Carver* v. *Plank-Road Co.*, 61 Mich. 584; *Little* v. *Railway Co.*, 78 Mich. 205; *Breckenfelder* v. *Railway Co.*, 79 Mich. 560; *Richmond* v. *Railway Co.*, 87 Mich. 374; *Rascher* v. *Railway Co.*, 90 Mich. 413 (30 Am. St. Rep. 447); *Ashman* v. *Railroad Co.*, 90 Mich. 567.

Judgment should be reversed, and a new trial ordered.

MONTGOMERY, J., concurred with MOORE, J.