SMITH *v.* DETROIT & MACKINAC RAILWAY CO.

RAILROADS—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE.
   While a train was at the depot, a woman who desired to take it
   was several hundred feet away, riding a bicycle on the street
   sidewalk. Her husband asked the conductor to wait for her,
   and he said he would, but to hurry her up. The husband,
   with his hand, tried to signal her to hurry; but there was
   nothing to indicate that she saw it. Before reaching the de-
   pot, she was obliged to cross a spur track, over which the rail-
   road company was accustomed to haul long timber, a 15-foot
   reach being attached to the tender of its engines in order to
   effect a coupling. The woman was familiar with the sur-
   roundings, and with the method of handling the cars and
   timber. As she approached the crossing, an engine was back-
   ing towards it, in plain view, reach foremost; and, discover-
   ing that she could not cross and escape injury, she dis-
   mounted so close to the track that she was struck by the
   reach or a part of the engine, and instantly killed. *Held,*
   that there was nothing in the circumstances making her
   other than an ordinary traveler on the highway, and that she
   was guilty of contributory negligence, precluding a recovery
   for her death.

Error to Alcona; Connine, J. Submitted February 2,
1904. (Docket No. 50.) Decided April 5, 1904.

Case by Christopher C. Smith, administrator of the
estate of Margaret Smith, deceased, against the Detroit &
Mackinac Railway Company, for the alleged negligent
killing of his intestate. From a judgment for plaintiff,
defendant brings error. Reversed.

The village of Black River, in 1898, contained between
250 and 300 inhabitants. The main street runs east and
west through the village, and is 50 feet wide. The houses
are scattered. Plaintiff lived on the easterly side of the
village, on a highway known as the "State Road," run-

ning north and south, at right angles with the main thoroughfare. The defendant's main track runs northeasterly and southwesterly through the village. Its depot is situated alongside the track, south of the main thoroughfare. To the east of the main track lies a spur track, which connects with the roundhouse, situated southwest of the depot. At the main thoroughfare this spur track is 191 feet from the main track, and runs in a more easterly direction than the main track. On the north side of the highway is a sidewalk about 3 feet wide, which extends across the spur and main tracks. As it approaches the spur track, the walk, for a short distance, is elevated somewhat above the ground. The principal business at the place is handling long timber, which was brought over the defendant's road to the bay shore at that place.

Mr. Smith, the plaintiff, and his wife, had lived there for 10 years prior to her death. He had been a foreman for defendant for some years, and had had charge of the engines and cars used in moving this timber. Because the timber would stick out over the car, it was necessary to use what was called a "reach" for the purpose of coupling the engine and car together. This reach was about 15 feet long, extending back of the tender. This spur track was used in moving such timber, and trains passed over it from 15 to 30 times a day, and sometimes oftener. The trains were always backed in. They did not run on schedule time, but might be expected at any moment. Both the plaintiff and his wife were perfectly familiar with the situation, with the construction of the reach, and with the method of handling the cars and the timber. Their house was situated on a lot adjoining this spur track.

Plaintiff and his wife were intending to take the passenger train which left at 7:10 o'clock a. m., June 4, 1898, to spend the day at a near-by station. He left his home first on his bicycle, and she was to meet him at the depot on hers. He was at the depot when the train arrived.

As the conductor alighted from the train, plaintiff asked him if he would not hold the train for the arrival of his wife, whom he saw coming on the sidewalk of the main thoroughfare 762 feet distant. The conductor replied that he would, but to hurry her up, and he passed into the depot. Plaintiff motioned to his wife with his hand, trying to signal her to hurry. Whether she saw the signal is not known. After plaintiff had spoken to the conductor and signaled to his wife, he turned to put his wheel in the baggage car, and the conductor went into the station. Meanwhile, an engine, with its tank or tender and the reach, left the roundhouse, situated 645 feet south and west of the highway, to go northeast on the spur track. Mrs. Smith continued on her bicycle along the plank walk. When within 98 feet of the spur track, she could see at a glance to the southwest along the track a distance of 350 feet from the highway. As she approached nearer she could see farther. Plaintiff himself testified, "If you got within 30 feet of the track, and you looked down the track, you could see a distance of 600 to 700 feet." Other witnesses, both for the plaintiff and the defendant, testified to the same effect. A witness for the plaintiff, named Beede, testified that he was upon the sidewalk 98 feet east of the track when she passed him on her bicycle. After she had passed him, he heard the engine coming, and called out to her, "Look out for the engine!" She made some reply, but he did not understand what she said. Just as she got close to the track, she dismounted, and a part of the reach or of the engine struck her, threw her down, and she was instantly killed.

The negligence charged is the failure to ring the bell, to maintain a watchman at the crossing, to maintain a lookout on the rear of the engine, the employment of an incompetent fireman, running at a dangerous rate of speed, negligently and wrongfully equipping its locomotive with the reach, and carelessly and negligently running such engine, so equipped, in close proximity to its depot, without giving travelers and its patrons approach-

ing its depot timely notice of the danger caused by reason of said reach projecting therefrom. The court left the questions of the negligence of the defendant and the contributory negligence of the deceased to the jury, who found a verdict for the plaintiff.

*T. A. E. & J. C. Weadock* and *Charles R. Henry,* for appellant.

*H. K. Gustin* (*De Vere Hall,* of counsel), for appellee.

GRANT, J. (*after stating the facts*).    That the bell was rung is conclusively established. It was charged that the fireman, who was leaning out of the cab of the engine on the right as it approached the crossing, and whose duty it was to keep watch of the highway on that side, had defective eyesight. He, however, testified that he saw the deceased as she approached the crossing, and notified the engineer, who was keeping watch on the other side, as soon as he saw that she was in danger. The engineer testified that, as soon as the fireman notified him, he applied the brake and reversed the engine. It was the rule of the company to keep a man upon the rear of trains when backing over public highways, but it appears there was no such rule or custom when an engine alone, with the reach attached, was crossing this highway. It is insisted on behalf of the defendant that the engineer and fireman were in such case sufficient to watch the highway and guard against any danger. Whether there was any negligence on the part of the defendant we find it unnecessary to determine. The case must be decided upon the contributory negligence of the deceased.

The learned circuit judge recognized the well-established rule that a traveler, in approaching a railroad crossing, is bound to look, and, if he cannot see, to stop and listen, and that, if the deceased approached this crossing as an ordinary traveler, she was guilty of contributory negligence. It was left to the jury to determine whether she was excused from the performance of this duty "by rea-

son of the signal which her husband had given from the depot, and by reason of all the surrounding circumstances;" and the court instructed them that "if she was justified in believing, or perhaps was led to believe, that at that time it was safe for her to approach this depot without stopping and looking and listening, she was not guilty of contributory negligence. * * * And I say to you, gentlemen of the jury, that she was guilty of contributory negligence, unless the circumstances were such as, in your judgment, justified her in relaxing her vigilance at that time before making the crossing,—unless the circumstances were such as justified her in not taking the usual precautions."

It seems hardly possible that she did not see the engine approaching the crossing from a southwesterly direction while she was going west, for it was within her line of vision without turning her head. Either she saw it, and thought she had time to get across, and did not discover her mistake until she had gotten close to the track, where she stopped and alighted and was struck, or else she paid no attention whatever, and did not see the engine until she was close to the track and the reach was close upon her. If she saw it, and, thinking she could get across, concluded to make the race and take the risk, clearly she was guilty of contributory negligence. This is the most probable theory. If she did not see it until it was close upon her, was she not bound to look and avoid an obvious danger? There was no occasion to listen, for sight would have given her all the information or warning she needed; there was no occasion to stop to look, for she could see without doing that. She was skilled in riding the bicycle. She was riding, as one of plaintiff's witnesses testified, "two or three times as fast as you could walk." She knew that engines and cars might be expected to cross at any moment. She was entirely familiar with the character of the cars and engines, and the danger attendant upon the place.

It is urged that she was, by the signal of her husband,

invited to enter the defendant's car; that from that moment she was in the custody of the railway company, and was notified by it that the way from where she then was to the station, a distance of 762 feet, was safe, and that no train would thereafter be sent over this spur track until she was safely across it. If she desired to become a passenger, it was her duty to be at the depot at the schedule time for the arrival and departure of the train. For some reason she was late. She had evidently just left her home as the train arrived. Those living east of this spur track, and desiring to become passengers upon that train, had had ample time to reach the depot. Unless the train waited beyond its schedule time, no one east of this spur track could reach it in time to take passage. Even if, as to outgoing passengers, there was any duty upon the defendant not to run its engines over this spur track while passengers might be coming to the train, that duty was fulfilled. Those in charge of the engine had the right to assume that passengers desiring to take that train were at the depot. There was nothing in the situation to notify those in charge of the engine that the deceased desired to become a passenger upon the train. Besides, it is mere conjecture whether she saw the signal of her husband. He testified, "I got no reply from her indicating that I had attracted her attention." There is no evidence upon which to base a finding that she was acting upon the invitation of the defendant, or that she was relieved from the usual precautions required of those crossing a railroad in a public highway. She was, therefore, an ordinary traveler, chargeable with the same notice that she was approaching a dangerous place, and with the same duty to look and to protect herself, as would be imposed upon any traveler. This being so, the case is clearly ruled by *Grostick* v. *Railroad Co.*, 90 Mich. 594 (51 N. W. 667); *Tucker* v. *Railway Co.*, 122 Mich. 149 (80 N. W. 984); *Lau* v. *Railroad Co.*, 120 Mich. 115 (79 N. W. 13); *Bennett* v. *Railway Co.*, 123 Mich. 692 (82 N. W. 518).

Many authorities will be found cited in the above cases. Judgment reversed, and new trial ordered.

The other Justices concurred.