## WISNIEWSKI *v.* DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY CO.

RAILROADS—NEGLIGENCE—CROSSING ACCIDENT.

Evidence tending to show that decedent was crushed between two sections of a freight train which defendant's employees were coupling together on a street crossing in the night, that there was an open space between the standing and moving cars, through which decedent attempted to pass, and no lights were displayed at the end of the moving .cars, that no trainmen were stationed at the crossing, and signals were not sounded, *held*, to raise an issue of fact for the jury upon the contributory negligence of deceased, since there were no eyewitnesses of the killing and decedent is presumed to have exercised ordinary care. McALVAY and BROOKE, JJ., dissenting.[1]

Error to Wayne; Van Zile, J.   Submitted June 4, 1913.   (Docket No. 28.)   Decided November 3, 1913.

Case by Frances Wisniewski, administratrix of the estate of Ignatz Wisniewski, against the Detroit, Grand Haven & Milwaukee Railway Company for the negligent killing of plaintiff's decedent. Judgment for defendant upon a directed verdict. Plaintiff brings error. Reversed.

*Dohany & Dohany,* for appellant.
*Geer & Williams,* for appellee.

Plaintiff, as administratrix, sues defendant for damages arising out of the alleged negligent killing

---

[1] On the question of contributory negligence in attempting to cross in front of engine or cars standing near street crossing, see note in 11 L. R. A. (N. S.) 963. And as to contributory negligence in attempting to cross a train standing on a crossing, see notes in 13 L. R. A. (N. S.) 1066 and 34 L. R. A. (N. S.) 466.

of her intestate. Plaintiff's intestate, on the night of his death, had attended a "smoker" given by the lodge of which he was a member. The lodge room was located on Riopelle street between Willis and Canfield avenues. He resided on Dubois street between Garfield and Forest avenues. He was killed on defendant's tracks where they cross Warren avenue on Dequindre street. This point is two blocks west and two blocks north of his home.

The lodge room is located four blocks west and two blocks south of his home. He left the lodge room about 1 o'clock a. m. and his body was found beneath a freight car at 1:55 a. m. His feet were towards the east, the trunk of the body towards the west. His head, which had been severed from his body, was lying just west of the westerly rail of the track upon which he was killed. What he did or where he went after leaving the lodge room is unknown. As no witness saw the accident, it does not appear from which direction decedent approached the crossing. Between Hancock avenue on the south and Frederick street on the north, defendant maintains what is known as the "Farnsworth yard."

Crossing Warren avenue, there are ten tracks. Counting from west to east, Wilson's siding is the sixth track. It was upon this track that decedent met his death. The record discloses that it is customary for defendant to conduct switching operations in and about this yard during each night; there being many manufacturing institutions in the vicinity. The movements of the switching crew, as detailed by defendant's witnesses, just prior to the happening of the accident, were as follows: The switch engine moved north from Hancock, on the Wilson siding, and there coupled to a "drag" of 15 or 20 cars. It then moved south and "kicked" some cars from the north end of the "drag" into a track east of Wilson's siding. It then went south again and "kicked" seven cars

north into Wilson's siding. Upon this operation de-
fendant's witness, Squires, carrying a white light,
rode upon the northerly car as they drifted north.
According to his testimony, these seven cars stopped
directly across Warren avenue; two or three of them
being south of the south crosswalk. The engine then
went south and "kicked" two or three more cars into
an easterly track and then, with two or three cars
attached, moved north on Wilson's siding to couple
onto the seven cars standing across Warren avenue.
Squires had walked along the west side of these seven
cars and was at the south end awaiting the approach-
ing engine to make the coupling. After the impact,
the cars were pushed north about a car length, when
Squires' attention was attracted by some one shout-
ing at Warren avenue that a man had been killed.
The train was stopped and an examination discovered
decedent's body lying, as described, a few feet north
of the southerly sidewalk on Warren avenue. The
evidence conclusively established the fact that the
switching engine, in the course of these operations,
was equipped with an automatic bell which was ring-
ing all the time.

It is likewise established that a pedestrian, when
approaching Wilson's siding from the west, would
have an unobstructed view to the south, beyond Han-
cock avenue, when 40 feet distant, and if approaching
from the east a like unobstructed view at a much
greater distance from Wilson's siding. An electric
light hangs in the middle of Warren avenue, 60 feet
west of Wilson's siding.

It was the theory of the plaintiff that decedent had
approached the crossing from the west; that defend-
ant, in placing the seven cars across Warren avenue,
had cut them, leaving an open space at the south
sidewalk; that decedent noticed this opening and at-
tempted to pass through, when the cars to the south
were pushed against him, throwing him to the ground

and running over him. The only evidence in the record tending to support this theory is that of plaintiff's witness Monarch, who testified in part as follows:

"*A.* As I walked along Dequindre street I passed and I was between the fire tower and the engine room and I heard a noise and when I heard that voice I looked around and I heard a crash of cars and when I got to the— The crash came right after I heard some one holler.    *    *    *

"*Q.* Now was there any light on the cars that was standing still, or on the end of the car that crashed into the cars that were standing still?

"*A.* No, sir; there was not.

"*Q.* Were there any trainmen where these two cars came together at the time they came together?

"*A.* No, sir; there was not."

The learned circuit judge assumed this testimony to be true but directed a verdict for defendant upon the ground that plaintiff's decedent was guilty of contributory negligence as a matter of law. He said in part:

"Suppose we accept as true, for the sake of argument, and the defendant disputes it by several witnesses, but suppose we accept it as true, and we would have to accept it as true at this stage of the case; that is, the witness Mark testified an opening was left between the cars as they stood there on Warren avenue so that persons could pass through who desired to cross at the point, and the deceased, according to the theory of plaintiff's counsel, undertook to pass through and was struck by the car or cars of the defendant, set in motion by the defendant's servants. Now, conceding that to be true, and suppose we go further and concede that there was negligence on the part of the defendant even in handling those cars, and that the negligence of the defendant resulted in the accident. Now, while I don't believe the proofs warrant this finding, but I am supposing this to be so for the sake of this illustration and for the sake of the case, then can it be said that the second requirement is made out, namely, that the negligence of the

deceased did not contribute to this accident? It is claimed by counsel for the plaintiff that this, under the circumstances of this case, must be presumed, that he was not negligent, because he was killed and no one saw him killed, and that the presumption is that he was exercising that diligence that an ordinarily prudent man would exercise in protecting himself, and that is a presumption of the law where there is no testimony upon that subject on account of the death of the person who was injured; it is presumed that the man would exercise that reasonable care and prudence which would be exercised by a reasonably prudent man in taking care of himself. But this is, a presumption of the law, and we are to presume for example, carrying that farther, we are to presume for example, that he exercised the care and the prudence of an ordinarily cautious person, that he looked, and that he listened for the approach of cars or trains, and that he did all that an ordinarily prudent man would do to protect himself. Now that is a presumption; but a presumption may always be overthrown by proof and so, if there is proof in this case that would or should overcome such a presumption, the plaintiff cannot have the benefit of it. In this case no one saw the deceased as he stepped between the cars; no one saw him meet his death. But the situation of the tracks is undisputed and what he must have discovered if he had looked and listened and been ordinarily cautious as he was bound to be. The car that struck him, according to the theory of the plaintiff, was on Wilson's siding. To go to the place where it was and where he was struck, he would have to walk on defendant's tracks some 40 feet; he would have to cross the Allison siding and the two main tracks before he would arrive at the Wilson siding, a distance of something like 40 feet; and while traversing this distance, according to the proofs, he had a clear vision down the track for a long distance, a distance at least as far beyond where the defendant's engine and cars were at work and where these cars and this engine were approaching on the Wilson siding. The bell on the engine was ringing. An arc light and electric light was burning 60 feet from the cars on the Wilson siding, or about that distance, on the side of the track on which

he approached. So that it may be said here as an undisputed fact, I take it, that he could have seen (that an ordinarily prudent and cautious man could have seen), and that he must have heard the engine and the cars approaching. Now, it is a dangerous situation; the tracks themselves are to be considered, when one is crossing them, as being a place of danger when cars are running over them. It was a dangerous situation and a reasonably cautious man must be held to have understood it to be so. With such like surroundings, it cannot be presumed that the deceased was acting with caution; that is, with the caution that an ordinarily prudent man would act, being in a position where he could have seen and should have seen, where he could have heard and should hear, being upon these tracks and the lights being as they were, walking the distance that he did, an ordinarily cautious man could have seen and could have avoided the accident. Had he proceeded with care, looking and listening, he would not have been injured, and so we conclude that he was guilty of contributory negligence; that the proofs here show that he was guilty of contributory negligence. Therefore there can be no recovery and your verdict must be for the defendant, and you will so find."

Brooke, J. *(dissenting; after stating the facts).* We are of opinion that the action of the court below was warranted by decisions of our own court. We pass the question raised by defendant that a verdict for plaintiff is not warranted because it must of necessity be based wholly upon conjecture; there having been no eyewitness of the tragedy. We likewise pass the question of defendant's negligence. It may be said, however, in passing, that, if defendant operated its cars on the night in question as detailed by the witness Monarch, such operation would at least raise a question of fact as to defendant's negligence.

Was plaintiff's decedent guilty of negligence as a matter of law? There having been no witness to his death, due care on his part is to be presumed. This presumption must take the case to the jury unless the

undisputed evidence in the case clearly negatives the presumption. A railroad track is in and of itself, a warning of danger to one approaching it, and before attempting to cross it he is bound to make use of his senses to discover whether or not a train is approaching. *Gardner* v. *Railroad Co.*, 97 Mich. 240 (56 N. W. 602), and cases cited.

In the case at bar, the defendant's right of way across Warren avenue was covered with a network of ten tracks. Plaintiff's decedent was a man 34 years of age and had lived in the vicinity for four years. There was an arc light in the middle of the street, 60 feet distant from the track upon which he was killed. It was a light night. Switching operations were being carried on by an engine, with a constantly ringing bell, some three or four hundred feet away. These operations were in full view of decedent when he reached a point 40 feet distant from Wilson's siding.

In addition to the foregoing, it is undisputed that witness Squires stood at the southerly end of the "drag" of cars, two or three car lengths south of the south sidewalk on Warren avenue, with a lighted lantern with which he signaled the switch engine to back up. It was at the time this coupling was made and the cars pushed north that decedent lost his life, according to all the testimony. Of course, if decedent attempted to go under or between the cars while they were coupled together and completely blocking the highway, he would be guilty of such negligence as would preclude his recovery. We think it would be negligence equally culpable for him to attempt to pass through the opening described by the witness Monarch, when Squires stood in plain view within 100 feet of him, signaling with a lantern, and an engine with its bell ringing approaching in plain view from the south. *Gardner* v. *Railroad Co., supra; Braudy* v. *Railway Co.*, 107 Mich. 100 (64 N. W. 1056) ; *Lau*

v. *Railway Co.,* 120 Mich. 115 (79 N. W. 13) ; *Tucker* v. *Railway Co.,* 122 Mich. 149 (80 N. W. 984), and cases cited.

Judgment should be affirmed.

McALVAY, J., concurred with BROOKE, J.

BIRD, J. The conclusion of Mr. Justice BROOKE that the deceased was guilty of contributory negligence appears to me to be at variance with the testimony of the witness Monarch., He is the only witness who throws any light on the manner in which the deceased came to his death. He testified in part as follows:

"There are several Detroit, Grand Haven & Milwaukee tracks that cross Warren avenue and Dequindre street. As I walked towards Dequindre street. on the south side of Warren avenue, I noticed cars on the tracks. I could see an opening right through. The open way was on the south side of Warren avenue. They were freight cars. This was after 1 o'clock. The section north was pretty close to the sidewalk; that is, they came pretty close to the north side of the sidewalk. The People's Ice Company is on the south side of Warren avenue, right beyond Dequindre. As I walked along Dequindre street I passed and I was between the fire tower and the engine room and I heard a voice, and when I heard that voice I looked around and I heard a crash of cars and when I got to the— The crash came right after I heard some one holler. At that time I was on the sidewalk about 100 feet west from where these cars came together. After I heard this scream or holler and the cars came together, I walked out to the car and waited for it to pass, and I stood there about two seconds and I looked down and saw a body under the car—saw the body lying there. * * *

"*Q.* Now, was there any light on the cars that was standing still or on the end of the car that crashed into the cars that were standing still?

"*A.* No, sir; there was not.

"*Q.* Were there any trainmen where these two cars came together at the time they came together?

"*A*. No, sir; there was not.

"*Q*. Was any whistle blown before these cars came together?

"*A*. No, sir.    *   *   *

"*Q*. Was the bell of the locomotive ringing?

"*A*. No, sir; I did not hear the bell ringing."

A fair inference to be drawn from this testimony is that there was an opening between the cars on the south side of Warren avenue and that the deceased attempted to pass between and was knocked down and run over by them. If the cars were cut at the sidewalk, and there were no trainmen in the immediate vicinity, nor lights displayed, nor signals being given, which would indicate that the cars were about to be moved, the deceased was not guilty of contributory negligence, as a matter of law, in attempting to pass between them. In streets passing through railway yards it is not uncommon for cars to be left standing near the sidewalk; and, where there is nothing to indicate that they are being "switched," pedestrians do not usually hesitate to pass between them.

The testimony of the witness, considered in connection with the rule that no presumption of negligence can be indulged against the deceased, persuades me that his negligence was a question for the jury and not for the court.

The judgment should be reversed and a new trial granted.

STEERE, C. J., and MOORE, KUHN, STONE, and OS-TRANDER, JJ., concurred with BIRD, J.