PHILLIPS *v.* DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY CO.

1. RAILROAD CROSSINGS—DUTY OF TRAVELERS.

A railroad crossing is, in itself, a warning of danger, and a person approaching it is bound to recognize the fact, and to make use of the sense of hearing, as well as the sense of sight, to enable him to avoid injury; and, if either sense cannot be rendered available, the obligation to use the other is the more clear.

2. SAME—CONTRIBUTORY NEGLIGENCE.

A deaf man who drives upon a railroad track at a crossing without stopping to look for an approaching train is guilty of negligence, precluding a recovery for injuries caused thereby, although another vehicle, 175 feet ahead of him, has crossed in safety, and although it is unusual for a train to pass the crossing at the particular day and hour.

3. SAME.

Such person is not excused from taking proper precautions by the fact that his view of the track is obstructed, especially if the difficulty may be overcome by simply standing upright in the vehicle.

Error to Ionia; Dodds, J., presiding. Submitted October 20, 1896. Decided December 24, 1896.

Case by Oscar Phillips against the Detroit, Grand Haven & Milwaukee Railway Company for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

*Vernon H. Smith* and *Clute & Clute,* for appellant.

*L. C. Stanley (E. W. Meddaugh* and *Geer & Williams,* of counsel), for appellee.

LONG, C. J. This action is brought to recover damages for an injury to the plaintiff by a passenger train at a highway crossing on the defendant's road. On Sunday, June 4, 1893, a washout had occurred on the Chicago & Grand Trunk Railway, between Lansing and Durand, so that the through passenger train from Chicago eastward was taken from Lansing to Ionia, thence eastward to Durand, over the defendant's road, passing through the village of Muir, where the accident happened. The train passed the station at Muir, without stopping, a little past noon, running at a rapid rate of speed, the witnesses varying in testimony in regard to it; some stating the rate as high as 45 miles an hour, and others about 20 miles. It was an irregular excursion train. Three blocks east of the depot, and about 1,170 feet distant, the train passed over Plain street at a grade. The plaintiff, a man about 67 years of age, quite deaf, lived at Portland, about seven miles from Muir, and on that morning, traveling from his home to Carson City, passed through the village of Muir. He entered the town from the south side on Prairie street, and turned eastward into Superior street, which is parallel with the track of defendant's road, and about 200 feet distant from it. He traveled along Superior street about 1,170 feet, when he turned northward into Plain street. No train was in sight when he turned into Plain street. He was riding in a single carriage, with the top up and side curtains off, drawn by one horse, which was gentle and steady. Driving northward along Plain street, his view was for the most part obstructed, first by a.

dwelling-house, then by some bushes, a hen-house, and a pile of ties, the ties extending up to within 6 or 8 feet of the railroad track. The hen-house was about 6 feet high, and the ties, at the utmost, were only 9 feet high. The plaintiff did not stop his horse, but drove along to a point past the pile of ties, when, looking westward, he saw the train approaching, about 70 feet distant from him. His horse was then upon the track. He drove across, and the train caught the carriage, overturning it, and injuring the plaintiff severely, as well as damaging his horse and carriage. The negligence charged is:

1. That the defendant, by allowing the ties to remain there, and obstruct his view, led him into a place of danger.
2. That it failed to provide a watchman.
3. That the train was running at an unlawful rate of speed, and without sounding the bell or whistle.
4. That the defendant had no right or authority to run the train on Sunday.

At the close of the case, the court below directed verdict and judgment in favor of the defendant. Plaintiff brings error.

From the record it is apparent that the plaintiff took none of the precautions which the law requires of one who is about to cross a railroad track. Some claim is made that Stoddard, who was in advance of the plaintiff, passed over the track in safety, and that the plaintiff had the right to rely upon that fact, and was thereby not required to take the same precaution which he otherwise would; but it appears that Stoddard was greatly in advance of plaintiff, and had turned the corner off Plain street, a distance of nearly 175 feet, before the plaintiff reached the crossing; and it does not appear that plaintiff in any manner relied upon the fact that Stoddard had passed safely over. *Jensen* v. *Railroad Co.*, 102 Mich. 176; *Houghton* v. *Railway Co.*, 99 Mich. 308. The plaintiff, if he could not see an approaching train by reason of these obstructions, was bound to use greater pre-

cautions in nearing the track. A person about to cross a railroad track is bound to recognize the danger, and to make use of the sense of hearing as well as of sight, and, if either sense cannot be rendered available, the obligation to use the other is stronger, to ascertain, before attempting to cross, whether a train is in dangerous proximity; and if he neglects to do this, but ventures blindly upon the track, without any effort to ascertain whether a train is approaching, it must be at his own risk. This is the general rule settled in this State, but modified by the proposition that he is not bound to the same degree of care where he has no reason to expect a train to pass at that time. *Lake Shore, etc., R. Co.* v. *Miller*, 25 Mich. 274; *Guggenheim* v. *Railway Co.*, 66 Mich. 150. But the law requires a person to exercise a great degree of care in making these crossings. The track itself is a warning of danger; and, if one goes upon it heedlessly, he assumes the risk incident thereto. Here the plaintiff was quite deaf. It is apparent that he could not hear the noise of the train. He knew the track was there; was familiar with the road. He could not see because of these obstructions, and yet he did not stop or take any other precaution to ascertain if a train was approaching. He had no right to rely upon the fact that it was Sunday, and that no train was likely to approach, and drive blindly on. He must exercise some care. We are unable to find that he exercised any, even the slightest, care. If he had stood up in his carriage, and looked westward, he could have seen over the hen-house and the pile of ties, and have seen the train when it was some 1,200 feet away. He did not stop, and, if he had, he was, it appears, too deaf to hear the rumbling of the train. The case, it seems to us, is one where the plaintiff was so manifestly guilty of contributing to his own injury that a recovery should not be permitted.

In *Shufelt* v. *Railroad Co.*, 96 Mich. 327, it appeared that, if Mrs. Shufelt had stopped 18 or 20 feet from the crossing, she could have seen the train. Mr. Justice

HOOKER, in that case, speaking for a majority of the court, said:

"It was her duty to look both ways, after getting where she could see, before venturing upon the track, and she should have taken sufficient time to do so, though it became necessary to stop her team for the purpose. * * * A person is not justified in driving upon a straight track in the face of an approaching train without looking for it, and obstructions to the view in proximity to the track increase the obligation of extreme caution."

The present case, upon its facts, shows more clearly the obligation resting upon the plaintiff, for not only was his view obstructed, but he was very deaf. Whatever view may be taken of the testimony, giving it all the latitude claimed by counsel for plaintiff, it is difficult to find in it any proof of care or caution taken by plaintiff, as he ran blindly into danger.

The contention of counsel that this was a Sunday excursion train, and unlawfully run, we think, can have a bearing only upon the question as to whether the plaintiff would not be required to exercise the same care in making the crossing. If he was not expecting a train, or had a right to assume that no train ever ran on Sunday over that road, and he was relying upon that fact, it might, in a sense, excuse him from that degree of care that otherwise he was bound to exercise. But it is apparent from the record that, if the plaintiff had that in view, he did not take the precautions which the law requires, for even under such circumstances he had no right to go blindly upon the track. But, though it is the exception on that road to run Sunday trains, yet excursion trains frequently go over the road on Sunday.

The judgment must be affirmed.

The other Justices concurred.