887 F.2d 1086
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James T. COX, Plaintiff-Appellant,
v.
CSX TRANSPORTATION, INC, Defendant-Appellee.
 No. 88-6235.
 United States Court of Appeals, Sixth Circuit.
 Oct. 12, 1989.
 
 Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 In this diversity tort action, plaintiff-appellant James T. Cox appeals a jury verdict for defendant-appellee CSX Transportation, Inc. ("CSX"). For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On May 6, 1980, at approximately 11:40 a.m., James T. Cox was severely injured when the fully loaded dump truck he was driving was struck by an L & N Railroad train at the "Amos" crossing, a private railroad crossing in Williamson County, Tennessee. Cox originally brought an action on May 15, 1981, against the L & N Railroad, Monsanto Company, and the train engineer in the Circuit Court of Williamson County, Tennessee. The original action was voluntarily dismissed on November 11, 1986.
 
 
 3
 Cox, by and through his guardian, First Tennessee Bank, filed this action on May 14, 1987, against Monsanto Company and CSX (a successor in interest to L & N Railroad). Upon motion of Cox's counsel, an order dated August 17, 1988, was entered dismissing Monsanto Company with prejudice.
 
 
 4
 Immediately prior to trial, the district court heard motions in limine on evidentiary issues. Plaintiff Cox moved for permission to introduce evidence that he, as a matter of habit, always stopped prior to negotiating the crossing. Defendant moved to exclude all evidence that on previous occasions the signals at the railroad crossing "malfunctioned" in that the signals had activated with no train approaching or had failed to activate when a train approached. Defendant also sought to exclude evidence of "near-misses" between automobiles and trains at the same crossing.
 
 
 5
 Before ruling on defendant's motion, the district court inquired as to whether it was Cox's position that on the occasion of the accident he stopped at the crossing and whether Cox would present proof that the warning signal was malfunctioning at the time of the accident. Counsel for Cox stated that he would introduce evidence that Cox had a habit of always stopping at the crossing to prove that he stopped on the occasion of the accident, but he conceded that the evidence would show that "the signals were probably functioning." The district court ruled that Cox's counsel could introduce habit evidence to attempt to prove that Cox stopped on the occasion of the accident but that he could not refer to prior malfunctions or "near-misses" in his opening statement. The court's position was that unless Cox intended to prove that the signal lights were not working on a particular occasion, past negligence would have no "connection" with the accident. Moreover, malfunctions would be irrelevant in light of Cox's position that he stopped.
 
 
 6
 During his case-in-chief when plaintiff attempted to present the testimony of numerous truck drivers that the warning signals often malfunctioned, the district court would not allow that testimony. At the conclusion of Cox's evidence, CSX moved for a directed verdict on all issues and all theories of liability. The district court granted a directed verdict on the following theories of liability: (1) that defendant was guilty of negligent design and maintenance of the railroad crossing; (2) that defendant was negligent by ignoring warnings of a dangerous condition; and (3) that defendant was guilty of gross negligence and willful misconduct.
 
 
 7
 After CSX presented evidence that Cox did not stop before entering the crossing, Cox's counsel again tried to offer in rebuttal evidence of prior signal malfunctions and "near-misses."[1] The district court again refused to allow the testimony.
 
 
 8
 The jury returned a verdict for the defendant. Cox filed a timely motion for a new trial which was overruled. This timely appeal followed.
 
 B.
 
 9
 At the Amos crossing, the L & N Railroad runs generally from north to south, and the haul road on which Cox was traveling runs from east to west. When the collision occurred, the ninety-three-car train was traveling toward the south, and the plaintiff's loaded truck was traveling toward the west across the track.
 
 
 10
 Prior to the accident, Cox negotiated the crossing several times a day in connection with his job of hauling phosphate from a local mine to a tipple located adjacent to the L & N Railroad track. The train involved in this accident was an "extra," running at a time when trains were not normally expected at the crossing. The parties agree that the weather conditions were dry and clear on the day of the accident. It is uncontested that the train gave a warning whistle and that its rotating headlight was operating as the train approached the crossing.
 
 
 11
 It is uncontradicted that from the vantage point of a truck driver, such as Cox, a train could be seen at least six hundred feet away. In fact, Cox's counsel conceded on the record that "Jimmy Cox could have seen down the track from better than 600 feet if he were one to two truck lengths back; that may save a lot of time." Tr. 195.
 
 
 12
 Since Cox was so severely injured that the trial court found him incompetent to testify, the only eyewitnesses able to testify were members of the train crew. The train conductor, Mr. Rauschenberger, testified that the truck approached the crossing, slowed, and when the train was only 150 feet away, Cox's truck proceeded onto the tracks. The conductor engaged the emergency brake, but the momentum of the train carried it into the truck. The conductor testified that he could see Cox and that "[Cox] was looking straight ahead" in his truck.
 
 
 13
 Cox's position, through counsel, was that he stopped at the crossing as was his habit, that he looked but the train was not visible, and that the train approached at such a high rate of speed that it caught him in the crossing. Several of Cox's codrivers testified that Cox was a very careful driver and that he always stopped at the crossing. Testimony conflicted about the exact speed of the train with the train crew estimated the speed at approximately thirty miles an hour, an expert witness for CSX estimating the speed at thirty-two miles per hour, and Cox's coworkers estimating the speed at forty-five miles per hour.
 
 
 14
 Plaintiff Cox presents several issues for appeal, all of which turn upon the propriety of the district court's ruling on the admissibility of evidence of prior malfunctions of the warning signals and "near-misses" at the railroad crossing. Plaintiff argues that the evidence was relevant and admissible on the following issues: (1) negligence in the maintenance of the crossing and its signal system, (2) knowledge of the dangerous nature of the crossing created by the malfunctioning signal system, (3) gross negligence and willful and wanton conduct bearing upon the issues of punitive damages and Cox's contributory negligence, and (4) Cox's contributory negligence.
 
 II.
 A.
 
 15
 A trial judge's decision regarding an evidentiary ruling will not be reversed absent a clear showing of abuse of discretion. See, e.g., Schrand v. Federal Pac. Elec. Co., 851 F.2d 152, 157 (6th Cir.1988); United States v. Rios, 842 F.2d 868, 872 (6th Cir.1988) (per curiam), cert. denied, 109 S.Ct. 840 (1989) (citing United States v. Mahar, 801 F.2d 1477, 1495 (6th Cir.1986)). Abuse of discretion exists where the reviewing court is firmly convinced that a mistake has been made. Schrand, 851 F.2d at 157 (citing Hill v. Bach, Halsey, Stewart, Shields, Inc., 790 F.2d 817, 826 (10th Cir.1986)).
 
 
 16
 A reviewing court will not grant a new trial or set aside a judgment unless the error complained of affects the substantial rights of the parties and some action is necessary to achieve substantial justice. Fed.R.Civ.P. 61; 28 U.S.C. Sec. 2111; McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 104 S.Ct. 845 (1984). The reviewer must assess the likelihood that the error affected the outcome of the case. Schrand, 851 F.2d at 157.
 
 B.
 
 17
 The district court excluded the proffered evidence because it was "not connected" to this accident and not relevant. Relevant evidence is evidence having any "tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed.R.Evid. 401. The relevance of evidence depends upon the purpose for which it is offered. See Koloda v. General Motors Parts Div., 716 F.2d 373, 375 (6th Cir.1983). Cox's arguments assert four purposes for the proffered evidence.
 
 
 18
 First, Cox argues that the evidence is probative of negligent maintenance of the crossing. In Tennessee, a plaintiff can recover on a negligence theory "only if the defendant's conduct can be shown to be (1) negligence, and (2) [a] proximate cause of the injury." Tennessee Trailways, Inc. v. Ervin, 222 Tenn. 523, 438 S.W.2d 733, 735 (1969). In proximate cause analysis, the first inquiry is whether the acts of the defendant were a cause in fact of the injury. "If that inquiry shows that defendant's conduct ... was not a factor in causing plaintiff's damage, that ends the matter." Id.
 
 
 19
 At the trial, it was uncontradicted that the warning signal was functioning as Cox approached the railroad crossing. Moreover, Cox's position throughout the trial was that he stopped out of habit before entering the crossing regardless of whether the signals were on or off. The only logical conclusion is that negligent maintenance was not a factor in causing Cox's injury. We agree with the trial court that past malfunctions and "near-misses," if offered to prove negligent maintenance, were "not connected" and irrelevant.
 
 
 20
 Cox's second argument for admissibility of the evidence is that past malfunctions and "near-misses" gave notice to CSX of a "dangerous condition." This argument presupposes that prior malfunctions made the crossing dangerous on the day of the accident. The train engineer testified that if he were aware of a problem with the signals, he would change the way he operated his train. However, the uncontradicted proof at trial was that the signals were working on the day of the accident. In the absence of proof that a dangerous condition existed at the time of the accident, we must conclude that notice that a dangerous condition had existed would be irrelevant.
 
 
 21
 Moreover, before this court will allow proof of similar incidents to show notice of a dangerous condition, the circumstances involved must be sufficiently similar to give notice of the danger. Koloda, 716 F.2d at 376. The proffered testimony of Mrs. Morrell was about "near-misses" which occurred when a train was on the tracks but the warning signals failed to activate. Truck drivers would have testified that the signals often malfunctioned, sometimes giving false warnings and sometimes failing to give a warning when needed. The proffered testimony of Mr. Armstrong, the man who maintained the signals for CSX, was to the effect that he found the signals flashing in the absence of a train on one or two occasions in the course of routine maintenance. While the proffered testimony might prove that defendant CSX knew the signals had malfunctioned, it does not prove that CSX had notice of the alleged danger; viz., that drivers were ignoring an active warning signal at the railroad crossing.
 
 
 22
 Cox next argues that the proffered evidence should have been admitted to prove that the defendant was guilty of gross negligence and willful misconduct. In light of our conclusions that past negligent maintenance was irrelevant to this action and the past incidents were not probative of notice to defendant CSX that drivers were ignoring active warning signals, we find that this argument is without merit.
 
 
 23
 Finally, Cox argues that the evidence was admissible on the issue of his own contributory negligence. Simply stated, Cox's argument is that past malfunctions caused him to ignore or pay less attention to the signal on the day of the accident. We note that this argument flies directly in the face of Cox's position, and proof, that he always stopped as he approached the crossing and would require a jury to speculate that he suddenly decided the signals were too unreliable to follow.
 
 
 24
 Cox argues that prior malfunctions justifiably "blunted the edge of caution," relying on the "absent flagman" cases. See, e.g., Gaines v. Tennessee Central Ry. Co., 175 Tenn. 389, 135 S.W.2d 441 (1940); Southern Ry. Co. v. Penley, 175 Tenn. 380, 134 S.W.2d 177 (1939). The "absent flagman" cases hold that "where the railroad company maintains a watchman, that fact being known to the traveler, and the watchman is away from his post of duty and fails to signal the approach of trains" and an accident results, the jury should be allowed to decide whether the traveler was justified to rely on the absence of a flagman. Penley, 175 Tenn. at ----, 134 S.W.2d at 180.
 
 
 25
 We do not find those cases persuasive. In the "absent flagman" cases, travelers were mistakenly relying on past reliability. Cox argues that he was refusing to rely on the signals at the railroad crossing because of past unreliability.
 
 
 26
 In Nashville, Cinn. & St. Louis Ry. v. Barnes, 177 Tenn. 690, 152 S.W.2d 1023 (1941), the Tennessee Supreme Court held that a motorist was guilty of contributory negligence as a matter of law because he failed to roll his windows down or take extra precautions to hear a train approaching a railroad crossing in view of increased danger from very limited visibility. "[W]hen a crossing is 'particularly dangerous' because of conditions obvious to the driver, he should stop in order effectively to look and listen before proceeding on the tracks, this in the exercise of ordinary care." Id. at ---, 152 S.W.2d at 1025. Under the facts of this case, the danger was obvious to Cox. As he traversed this same railroad crossing several times a day, his duty of care for his own safety was increased rather than decreased.
 
 
 27
 Moreover, motorists must not enter a railroad crossing unless it is safe to do so. "In Tennessee, a railroad crossing is a warning of danger and a motorist is required to exercise ordinary care for his own safety." Newport v. Cincinnati, New Orleans & Texas Pac. Ry., 509 F.2d 1246, 1248 (6th Cir.1975) (applying Tennessee law). A motorist entering a railroad crossing must look and listen and is "chargeable with seeing what [is] there for him to see." Jeffries v. Louisville & Nashville RR, 560 S.W.2d 920, 921 (Tenn.Ct.App.1977), cert. denied (1978).
 
 
 28
 There for him to see and to hear was a train approaching with lights flashing, whistle blowing and bell ringing. Perhaps the visibility was to some degree limited by tree growth, but plaintiff knew of that condition as he crossed that same track ... each working day. The evidence is undisputed that the train could have been seen by the plaintiff for some distance before mounting the tracks.
 
 
 29
 Id. at 922 (affirming a directed verdict on those facts).
 
 
 30
 In this case, the evidence is undisputed that Cox knew of the crossing and could have seen the train when it was 600 feet or more away. Crossing warning lights were operating. The train sounded a warning whistle, and its Mars light was operating. It was daylight on a clear, dry day, and according to undisputed eyewitness testimony, Cox pulled in front of the train when it was only 150 feet away without looking toward the train. Under the circumstances, we hold that the proffered evidence would not have been probative of a justification for Cox's actions. Accordingly, we conclude that the district court did not abuse its discretion by refusing to admit the proffered evidence on the issue of Cox's contributory negligence.
 
 
 31
 Assuming arguendo that the district court committed error, we would find the error harmless. The uncontradicted evidence is that Cox could have seen the train when it was 600 feet or more away and that he could have stopped his truck before he reached the rails. Under Tennessee law he is guilty of contributory negligence as a matter of law. See Newport, 509 F.2d at 1249 (applying Tennessee law to reverse a trial court by finding contributory negligence as a matter of law on very similar facts); Perry v. Gulf, Mobile & Ohio RR, 502 F.2d 1144, 1146 (6th Cir.1974) (applying Tennessee law and finding contributory negligence as a matter of law where driver was aware of the crossing and at 25 feet from crossing driver could see 500 feet up the tracks); Jeffreys, 560 S.W.2d at 922.
 
 
 32
 Cox claims additional errors as follows: (1) the trial court erred in granting a directed verdict on the issue of negligent maintenance; (2) the trial court erred in granting a directed verdict on the issue of gross negligence; and (3) the trial court erred in not granting a new trial. All of these arguments are premised upon the claim that the district court erred in excluding the proffered evidence concerning prior malfunctions and related matters. Since we find no error in the evidentiary rulings, we find no merit in these assignments of error.
 
 III.
 
 33
 Accordingly, for the reasons stated, we AFFIRM.
 
 
 
 [1]
 Cox's proffer included the deposition of Leslie Morell, a local resident, to the effect that she had seen the signals malfunction many times, that she had informed CSX personnel of the malfunctions, and that she had had some "near-misses" when the signal had failed to flash as a train approached the intersection; testimony of several truck drivers that the signals often malfunctioned; testimony of Charles Armstrong, the signal maintenance man, to the effect that he had found the signals malfunctioning during his routine maintenance; and the testimony of Dr. Joseph Able concerning the psychological effects of signal malfunctions upon motorists. Since Cox has failed to argue the admissibility of the testimony of Dr. Able on appeal, we will not discuss it further