Abdul AYOUB, Representative of
the Estate of Abraham Sleiman
Ayoub, Plaintiff–Appellant,

v.

NATIONAL RAILROAD PASSENGER
CORPORATION (Amtrak), a railroad
company, The Consolidated Rail Corpo-
ration (Conrail), a railroad company,
and Dan Uldricks, an individual, jointly
and severally, Defendants–Appellees.

No. 94–1919.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 5, 1995.

Decided Feb. 27, 1996.

Edward G. Youmans (argued and briefed),
Detroit, MI, for Plaintiff-Appellant.

Gene S. Davis (argued), Mary C. O'Don-
nell, Rebecca Salminen Witt (briefed), Drig-
gers, Schultz, Herbst & Paterson, Troy, MI,
for Defendants-Appellees.

Stanley A. Prokop, Plunkett & Cooney,
Detroit, MI, for Defendant.

Before: MERRITT, Chief Judge;
BATCHELDER, Circuit Judge; DOWD,
District Judge.*

DOWD, District Judge.

## I.  Introduction

This is a diversity negligence action arising
out of a car-train accident in Detroit, Michi-
gan, in which the driver of the car, Abraham
S. Ayoub, was killed.  The parties do not
dispute that the accident occurred after Ay-
oub drove around functioning crossing gates
and disregarded flashing warning signals
during broad daylight.  Ayoub's representa-
tive claims that prior signal malfunctions at
the crossing conditioned Ayoub to ignore the

---

* The Honorable David D. Dowd, Jr., United States
District Judge for the Northern District of Ohio,
sitting by designation.

warning signals. The United States District Court for the Eastern District of Michigan awarded summary judgment to the defendant-appellees, holding that evidence of prior malfunctions was irrelevant when the signals were functioning properly at the time of the accident. We affirm.

## II. Factual Background

Abraham Ayoub, age 21, was driving north on Lonyo Road on his way to work at approximately 7:30 a.m. on Friday, January 10, 1992. The weather was clear and dry. When he approached a point where the road intersected with several railroad tracks, a set of crossing gates was down and warning lights were flashing. According to eyewitnesses, Ayoub stopped briefly behind two waiting vehicles, then pulled around those cars, began to cross the tracks, and drove into the path of a westbound passenger train. The impact flipped the car and ejected Ayoub, who died at the scene. The train was operated by appellee National Railroad Passenger Corp. ("Amtrak") and engineered by appellee Dan Uldricks on tracks owned by appellee Consolidated Rail Corp. ("Conrail").

Uldricks provided uncontradicted deposition testimony that the train was traveling at 58 miles per hour, well within the federally established speed limit of 80 miles per hour on its track classification.[1] Uldricks stated that he was blowing the train's whistle in the prescribed sequence as the train approached the intersection and blew it even more when he saw the car heading across the tracks.

In a scattershot approach, Appellant alleged numerous theories of negligence.[2] The claims boil down to allegations that Conrail and Amtrak negligently maintained the crossing, conditioning Ayoub to ignore the warning devices.

In opposing Appellees' motion for summary judgment, Appellant submitted information contained in a Michigan Department of Transportation (MDOT) traffic safety file. The file included reports of six accidents at the crossing since 1969. Only two of these accidents occurred in the decade prior to Ayoub's accident, and neither produced injury. The file also included letters, petitions and an MDOT report detailing citizen and city dissatisfaction with the condition of the crossing. Most items in the file were dated between 1969 and 1980.

Appellant also provided an affidavit from Clarence Magoon, a former administrator with the Michigan Department of Transportation, who has testified as an expert in railway safety matters in both state and federal court. Magoon averred that the traffic control devices at the crossing were defective because "by their frequent maloperation [sic] they no longer served their intended function as meaningful warning devices." Appellant asserts that this affidavit is sufficient to put material facts at issue and preclude summary judgment.

Appellees deny that the crossing was unsafe or that the train was operated negligently. They provided affidavits from technical experts verifying that the warning signals functioned properly on the day of the accident. Given the undisputed evidence of safe operation on the date of the accident, Appellees contend that evidence of prior malfunctions is irrelevant.

Appellant argues that the evidence of prior malfunctions at the crossing created a genuine issue of material fact as to whether the decedent was conditioned into disregarding the warning signals. The district court held that because the warning signals functioned at the time of the accident, evidence of prior malfunctions was irrelevant.

## III. Discussion

■ Review by the Court of Appeals of a lower court's grant of summary judgment is *de novo* and uses the same test as the district court. *EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990). This court must determine, therefore, whether Appel-

---

1. Appellees submitted copies of regulations and an affidavit verifying that the track on which the train was traveling was classified as Class 4 Track, on which the federally established speed limit for passenger trains is 80 miles per hour.

2. In response to an interrogatory, Appellant listed twenty-one theories, many of them overlapping, on which his negligence claim was based.

lant raised any genuine issue of material fact which should have precluded summary judgment. Fed.R.Civ.P. 56.

Appellant argues that Conrail and Amtrak failed to maintain the crossing in a reasonably safe condition. As a result of witnessing a series of malfunctions, Ayoub became conditioned to disregard the warning signals on the morning of his death, according to Appellant.

This argument is unconvincing. Even if Appellant's allegations are taken as true, the court must rule as a matter of law that Ayoub's own gross negligence was the clear proximate cause of his death. *Marcelletti v. Bathani,* 198 Mich.App. 655, 500 N.W.2d 124, 128, *appeal denied,* 443 Mich. 860, 505 N.W.2d 582 (1993) (holding that if facts bearing· on proximate cause are not in dispute and if reasonable minds could not differ, then the issue is one for the court).

The evidence is undisputed that the crossing gates worked, the warning lights flashed and the train's horn sounded. Two other cars waited for the approaching train. Yet Ayoub disregarded the signals and pulled around those cars and into the crossing. Previous malfunctions at the crossing, even if verified, cannot overcome the fact that Ayoub's own negligence proximately caused his death. No reasonable jury could return a verdict for Ayoub's representatives under such circumstances.

In short, we hold that evidence of prior malfunctions of warning signals at a railroad crossing is irrelevant so long as the signals functioned properly at the time of the accident.[3] We fail to see a circumstance in which a plaintiff could prove that a railroad's negligence proximately caused an accident occurring after the plaintiff undisputedly disregarded properly functioning warning signals. Holding otherwise potentially could impose liability upon a railroad for any accident occurring at a crossing which had a prior warning signal malfunction which had been corrected.[4]

## IV. Conclusion

Appellant cannot escape the fact that the decedent drove past stopped vehicles, around functioning warning devices, and into the path of a train which was observing the applicable safety standards. Evidence of prior malfunctions cannot establish negligence when warning signals were functioning properly at the time of the accident.

The decision of the district court is hereby AFFIRMED.

---

3. Such a holding is consistent with this Circuit's analysis in *Cox v. CSX Transportation, Inc.,* No. 88–6235, 887 F.2d 1086 (Table), 1989 WL 119375 (6th Cir.1989), an unreported case involving similar facts. In *Cox,* Plaintiff, who had been seriously injured when his car was struck by a train, did not deny that the warning signals operated properly at the time of the accident but alleged that prior malfunctions conditioned him to ignore the signals. This Circuit affirmed the trial judge's decision to exclude evidence of past malfunctions and near misses.

4. Although he did not raise the issue during oral argument, Appellant's brief also asserted a claim for negligent operation of the train. Appellant contended 1) Appellees failed to provide adequate signals or seek permission from the state to upgrade the existing signals, and 2) Appellees failed to operate the train in a reasonably safe manner on the day of the accident.

This claim also fails. Under Michigan law, a railroad is under no obligation to erect or upgrade warning devices unless ordered to by the state. Mich. Comp. Laws Ann. § 257.668(2). Furthermore, Appellant presents no evidence raising an issue of material fact that the train, which was traveling 22 miles below the speed limit, was operated unreasonably under the circumstances.